**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

IZAIAH ABRAMS,

    Plaintiff,

v.                                                                    Case No: 8:24-cv-949-CEH-TGW

MANSARI LLC,

    Defendant.
_____/

## ORDER

This matter comes before the Court on the Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice (Doc. 19). In the motion, Plaintiff, Izaiah Abrams ("Abrams"), along with opt-in Plaintiff, Jayden McQueen ("McQueen") (collectively "Plaintiffs"), seek an Order conditionally certifying a collective of similarly situated non-exempt employees who performed duties as a mover for Defendant and who worked unpaid overtime in violation of the Fair Labor Standards Act, 29 U.S.C. 201, *et seq*. ("FLSA"). Defendant, Mansari L.L.C. d/b/a College HUNKS Hauling Junk & Moving (Defendant" or "Mansari"), filed a response in opposition (Doc. 20), and Plaintiffs replied (Doc. 28).

In the Motion to Conditionally Certify, Plaintiffs contend that conditional certification is appropriate and request that the Court: (1) conditionally certify the FLSA Collective of movers; (2) require Defendant to produce in an electronic or computer-readable format the full name, addresses, and personal email addresses for

each potential member of the FLSA Collective; (3) authorize notice in the form attached as Exhibit C to the motion with a form of "Consent to Join" to be disseminated by U.S. Mail and email to the FLSA Collective; and (4) grant further relief as appropriate. Doc. 19. Defendant opposes conditional certification, arguing that Abrams, who worked as a Junior Captain mover, is not similarly situated to the group of individuals he seeks to represent, and that Abrams fails to provide evidence that any other individuals are interested in joining the lawsuit. Doc. 20. The Court, having considered the motion and being fully advised in the premises, will grant Plaintiff's Motion to Conditionally Certify an FLSA Collective Action.

## I. BACKGROUND

### A. The Class and Claims

This is a collective action alleging willful violations of the FLSA that is filed pursuant to 29 U.S.C. § 216(b) by Plaintiff Izaiah Abrams and pertains to the pay of certain "movers" employed by Defendant Mansari. Doc. 9 ¶¶ 1–3. Mansari is a Florida limited liability company that is in the business of full-service moving, junk removal and trash pick-up, and providing packing and donation pick-up services. *Id.* ¶¶ 7, 9.

In the Amended Complaint, Abrams alleges that the action is brought on behalf of himself and the similarly situated individuals, as defined by 29 U.S.C. § 201, sec. 3(e), who currently work, or who worked, as a mover and performed similar moving duties for Defendant at any time during the applicable statutory period immediately preceding the filing of the original Complaint. Doc. 9 ¶ 12. The proposed Collective Class is defined as:

> All individuals who are or have been employed by or worked for Defendant, its subsidiaries or affiliated companies, as movers at any time during the applicable statutory period and performed moving services for Defendant including driving/cleaning moving trucks, lifting and moving household goods and furniture, and performing other related duties.

*Id.* ¶ 55.

The Amended Complaint raises a single cause of action against Defendant for violation of the FLSA in failing to pay Plaintiff and the putative class overtime wages for work in excess of forty hours in a workweek during the applicable period. *Id.* ¶¶ 71-85.

To support this claim, Abrams alleges that Defendant improperly required Plaintiffs and the similarly situated individuals to come to work an hour before the start of their paid shifts each day to perform tasks such as driving and cleaning moving trucks, and moving and carrying household furniture, goods, and personal items for customers, without overtime pay. *Id.* ¶ 32. He alleges that Defendant supervised or had operational control over Plaintiff and the similarly situated individuals who were performing moving jobs/services for Defendant. *Id.* ¶ 25. Defendant also requires Abrams and other similarly situated Movers to stay one hour past their paid shift to complete the remaining work without pay and to work an additional unpaid hour each week to perform miscellaneous duties. *Id.* ¶ 32. Abrams alleges that he and the other movers regularly worked in excess of 40 hours per week and were not paid overtime wages for the hours worked beyond 40 hours. *Id.* ¶¶ 37–39.

**B. Plaintiff**

3

Abrams worked for Defendant from June 2022 through September 2023 as a Junior Captain Mover. Doc. 9 ¶ 44. He was paid $17.00 for each hour he worked. *Id.* ¶ 45. Defendant required Abrams to arrive at headquarters by 7:00 a.m., which was approximately one hour before his paid shift began each day. *Id.* ¶ 46. During that hour before his shift started, Abrams was required to load packing supplies onto a truck, clean the trucks, and perform other preliminary tasks to get ready for the job. *Id.* These tasks were done without pay. *Id.* Abrams' paid shift did not begin until he and his team arrived at a customer's home and started the process of loading the customer's belongings onto the truck, which meant he performed approximately an hour of work before his paid shift began. *Id.* ¶ 47. Defendant additionally expected Abrams to stay an additional hour past the end of his shift to finish cleaning the truck and unloading the dollies and pads. *Id.* ¶ 48. This hour of work performed after his shift was unpaid. *Id.* Defendant also required Abrams to work one more hour per week on miscellaneous tasks such as truck maintenance, covering for the team if short-staffed, or situations in which customers were running behind schedule. *Id.* ¶ 49. Defendant did not count hours spent on the miscellaneous tasks toward Abrams' pay because he was not physically moving furniture. *Id.*

Abrams alleges that he typically worked six days per week and regularly worked over 40 hours in a workweek but did not receive overtime compensation for the hours worked in excess of 40 hours. *Id.* ¶ 50. Abrams estimates he worked 9.17 hours each week for which he was not paid. *Id.* ¶ 51. He alleges that he worked 195.44 overtime

hours while employed with Defendant for which he was not paid, resulting in approximately $4,983.72 in gross unpaid wages. *Id.* ¶ 53; Doc. 19-1 ¶ 8.

Abrams discussed the mover position with several other employees who performed similar overtime duties that were not compensated. Doc. 19-1 ¶ 9. He estimates there are at least 50 other movers employed by Defendant that were subjected to the same policies relating to their pay. *Id.* ¶ 10.

### C. Opt-In Plaintiff

Jayden McQueen is an opt-in Plaintiff, and he has provided an amended affidavit in support of the motion to certify. Doc. 28-2. The McQueen Amended Affidavit states that he worked for Defendant from August 2021 until September 2023. *Id.* ¶ 1. He left for a brief period but came back to work for Defendant again from March 2024 to August 2024. *Id.* McQueen states that he and other movers regularly worked more than forty hours per week, without being paid overtime wages, to perform all the duties required by Defendant. *Id.* ¶ 2. Defendant supervised and controlled McQueen and the other movers, setting their schedule, managing their hours, setting their pay, and determining if overtime was available. *Id.* ¶ 3. McQueen's primary duties, like the other movers, involved driving moving trucks, lifting and moving household goods and furniture, cleaning moving trucks, and loading and unloading dollies and pads. *Id.* ¶ 4.

The movers' paid shifts did not begin until the team arrived at the customer's home and the process of loading began, which meant that about an hour of work

performed before the paid shift began was never compensated. *Id.* ¶ 5. Movers were required to stay an extra half hour (without pay) after the paid shift, which ended when the customer signed for the completed job, to help with cleaning out the truck and unloading the dollies. *Id.* ¶ 6. McQueen and the other movers were required to work an additional hour during the week doing miscellaneous duties, such as truck maintenance or covering for a late co-worker, for which they were not paid. *Id.* ¶ 7. McQueen discussed the mover position with several other movers who report performing the same unpaid duties, and he estimates that there are approximately 100 other movers who were subject to the same policies related to their pay. *Id.* ¶¶ 8, 10. According to McQueen, Defendant changed its pay practices and policies around March 23, 2024, to comply with FLSA overtime pay requirements. *Id.* ¶ 9.

### D.     The Motion to Conditionally Certify

Plaintiffs urge conditional certification is warranted because the putative class had common job duties; they were employed as hourly employees; they worked overtime hours without overtime pay; they performed non-exempt work; and they were subject to common control over the terms and conditions of their employment by Defendant. Doc. 19 at 3.

Defendant contends that Abrams has not shown that the group of individuals he seeks to represent are similarly situated. Defendant attaches eight declarations to its response in an effort to demonstrate Abrams' experience was not similarly shared by other employees. *See* Docs. 20-1–20-8. Additionally, Defendant argues that Abrams fails to provide evidence that other employees are interested in joining the lawsuit.

6

## II.   LEGAL STANDARD

The decision to conditionally certify a collective FLSA action lies within the sound discretion of the Court. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). However, the Court "should satisfy itself" that there are similarly situated employees who desire to opt-in before certifying a collective action. *Dybach v. State of Fla. Dept. of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). Within the Eleventh Circuit, district courts are encouraged, but not required, to adopt a two-tiered approach to certification of classes in an FLSA case. *Hipp*, 252 F.3d at 1219; *see also Mickles v. Country Club Inc.*, 887 F.3d 1270, 1277 (11th Cir. 2018).

Under this two-tiered approach, the court's initial decision to conditionally certify a collective action often comes early in the case. In making this decision, the court must first "satisfy itself that there are other employees . . . [ (1) ] who desire to 'opt-in' and [ (2) ] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Chung v. Affordable Battery, Inc.*, Case No. 12-60612-CIV, 2012 WL 3759029, 1 (S.D. Fla. Aug. 29, 2012) (quoting *Dybach*, 942 F.2d at 1567). At the first tier, the Court's certification decision is based primarily on pleadings and affidavits, and the Court applies a "fairly lenient standard" in determining whether the plaintiffs are similarly situated. *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). Additionally, when there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the

7

plaintiff at the preliminary certification stage. *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629(KPF), 2013 WL 5211839, at *3 (S.D.N.Y. Sept. 16, 2013).

## III.   DISCUSSION

An employee may pursue an action to recover unpaid overtime compensation under the FLSA

> against any employer (including a public agency) in any Federal or State court of competent jurisdiction . . . for and [on] behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The purpose of authorizing § 216(b) collective actions "was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). In determining whether to conditionally certify a collective action, courts in the Eleventh Circuit first consider whether there are other employees who desire to "opt-in" to the action and then the court considers whether those employees are similarly situated in their position and their pay. *See Hipp*, 252 F.3d at 1217.

### A.   Standard

Plaintiffs contend the Eleventh Circuit's "two-tiered" approach is appropriately applied here. Conversely, Defendant argues that the Court should not apply the Eleventh Circuit's standard, because the leniency of the Eleventh Circuit's approach will not further judicial economy in these circumstances. Instead, Defendant urges this

8

Court to adopt the Sixth Circuit's approach which rejects a lenient standard that results in facilitation of notice that resembles a solicitation of claims. The Sixth Circuit requires a greater showing that the employees the plaintiff seeks to represent are similarly situated to him prior to the court granting his request to issue notice. Doc. 20 at 13–14 (citing *Clark v. A&L Homecare & Training Ctr, LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023)). The Court declines to follow the Sixth Circuit's approach and will apply the two-tier standard encouraged by the Eleventh Circuit.

### B. Employees Who Desire to Opt In

Under the Eleventh Circuit standard, the Court first considers whether Plaintiff can demonstrate that other employees desire to opt-in. *Alvarez v. Sun Commodities, Inc.*, No. 12-60398-CIV, 2012 WL 2344577, at *2 (S.D. Fla. June 20, 2012) (citing *Dybach*, 942 F.2d at 1567–68). There is "no firm line that has been drawn regarding the number of opt-ins necessary, or magic language required, to convince the court that additional putative plaintiffs will join or desire to join the action." *Campbell v. Pincher's Beach Bar Gill Inc.*, No. 2:15-cv-695-JES-MRM, 2016 WL 3626219, at *5 (M.D. Fla. July 7, 2016). However, in showing that others desire to opt in, Plaintiff "cannot rely on speculative, vague, or conclusory allegations." *Alvarez*, 2012 WL 2344577, at *2 (citing *Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV770-JDW-MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2003)). "Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence

9

of other similarly-situated employees." *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007).

Defendant argues that Abrams fails to identify any potential plaintiffs interested in opting into the litigation. While Defendant is correct that "a plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective," *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006), Plaintiff has done so here. Opt-in Plaintiff McQueen has filed a Notice of Consent to Join (Doc. 18). Although McQueen is the only opt-in Plaintiff who has filed a Consent to date, courts in this Circuit have found that one opt-in plaintiff is enough to "rais[e] the Plaintiff's contention beyond one of pure speculation." *Id.*; *see also, Torres v. Nature Coast Home Care LLC*, No. 8:16-CV-1970-JSM-MAP, 2016 WL 5870217, at *2 (M.D. Fla. Oct. 7, 2016) (finding "even one opt-in notice can be sufficient to meet the first requirement for conditional certification"); *Brooks v. A Rainaldi Plumbing, Inc.*, No. 6:06-cv-631-GAP-DAB, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006) (finding plaintiff can satisfy burden with "[e]ven a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit"). Additionally, both Abrams and McQueen have filed Amended Affidavits indicating they have spoken with other movers employed by Defendant who have expressed interest in joining the lawsuit. Docs. 28-1, 28-2. Specifically, the Abrams' Amended Affidavit identifies Bentley Tanner, Greg Cartagena, Richard Moore, and Jeovani Corjuo as current or former employees of Defendant who are interested in joining this lawsuit. Doc. 28-1 ¶ 10. Abrams has

10

satisfied this prong and met his burden of demonstrating there are other movers who wish to join this collective action.

### C. Similarly Situated

Next the Court must "satisfy itself" that the individuals who desire to opt-in are similarly situated. The term "similarly situated" is not defined in the FLSA, nor has the Eleventh Circuit stated a precise definition of the term. *Lewis-Gursky*, No. 8:15-cv-2887-SCB-MAP, 2017 WL 892604, at *3 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–60 (11th Cir. 2008)). To determine whether employees are similarly situated, the Court looks to whether the employees have similar job requirements and pay provisions. *Id.* (citing *Dybach*, 942 F.2d at 1567-68). A position need not be identical to the positions held by putative class members, but the plaintiff must demonstrate some commonality between the basis for his or her claims and those of the proposed class beyond the mere facts and duties and pay provisions. *Id.* (citing *Hipp*, 252 F.3d at 1217; *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit, or expert evidence. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004). In determining whether the putative plaintiffs are similarly situated, the court considers, among other factors:

> (1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographical location; (3) whether the alleged violations occurred during the same time period; (4) whether the

11

> plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; [and] (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar.

*Franco v. Bank of Am. Corp.*, 691 F. Supp. 2d 1324, 1326 (M.D. Fla. 2010) (citation omitted).

Abrams and the Opt-In Plaintiff contend they meet their lenient burden of demonstrating that they and the FLSA Collective: (1) are similarly situated in their duties, (2) were similarly compensated, and (3) were similarly deprived of overtime pay. In support, Abrams points to the facts that Defendant employed all movers as hourly employees and did not pay earned overtime wages to any of its movers. Additionally, Plaintiffs allege they all primarily performed the same or similar set of non-exempt duties at the Defendant's Tampa location, including duties such as driving moving trucks, lifting and moving household goods and furniture, cleaning the moving trucks, and loading and unloading dollies and pads. Plaintiffs have alleged that Defendant controls how its business operates and how movers perform their duties. Plaintiffs contend that movers regularly worked overtime hours (over 40 hours per workweek) in order to perform all of the duties required by Defendant.

For its part, Defendant submits the Declarations of eight employees who state that they have been paid for all the hours that they have worked for Defendant. Docs. 20-1–20-8. Although the Declarations state they have been paid for hours worked, they are silent as to whether the employees received time and a half (overtime pay) for hours worked beyond 40 hours. Additionally, review of the Declarations reveals that the

employees were similarly paid on an hourly basis and performed comparable duties of cleaning trucks and other responsibilities in addition to their "moving" duties. "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Devries v. Morgan Stanley & Co. LLC*, No. 12-81223-CIV, 2014 WL 505157, at *7 (S.D. Fla. Feb. 7, 2014) (citations omitted). Drawing all inferences in favor of Abrams at this preliminary certification stage, the Court finds he has satisfied this second prong of demonstrating the employees who wish to opt-in are similarly situated.

### D. Notice

Plaintiffs' motion requests notice be provided to all current and former movers employed by Defendant at its Tampa location, who worked more than 40 hours in a workweek within the last three years but who were not paid overtime pay as required by the FLSA. Doc. 19 at 17-18. Despite referencing a proposed notice in the motion, Abrams failed to attach the proposed notice to the motion, which Defendant points out in its response. Instead, Plaintiffs attach a proposed Form of Notice and Consents to their reply. Doc. 28-3. The proposed Notice seeks to include all current or former movers who performed work in the United States for Mansari, L.L.C. d/b/a College HUNKS Hauling Junk & Moving at any time since June 1, 2022.[1] *See id.*

---

[1] The proposed notice attached is not limited to the Tampa location as the motion represents.

13

To facilitate notice, Abrams additionally requests that the Court order Defendant to produce employee contact information and dates of employment for each putative class member to ensure accurate and timely notice concerning the pendency of the collective action is disseminated to putative class members. Abrams submits that email notice should also be permitted and that three years from the date the Court issues its decision is the appropriate temporal scope. Finally, Abrams submits he should be permitted to maintain an online website to provide notice to prospective collective members.

In response, Defendant contends a website is unnecessary. As for the temporal scope, Defendant argues that it should be three years from when notice is given. Finally, in the event the Court grants Plaintiffs' relief, Defendant requests the Court to order the parties to negotiate the terms of the proposed Notice and Consent to be submitted for the Court's review.

### IV.  CONCLUSION

Under the "fairly lenient standard" appropriate at this stage of the proceedings, the Court is satisfied that Abrams has provided a reasonable basis for his claim that there are similarly situated individuals that work or have worked for Defendant who desire to join this action. Accordingly, the Motion to Conditionally Certify an FLSA Collective Action will be granted, and Defendant will be directed to provide contact information regarding the Collective members. The parties will be directed to confer regarding the form of the Notice and Consents. It is hereby

**ORDERED**:

1. Plaintiff's Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice (Doc. 19) is **GRANTED**.

2. The parties shall confer and submit a jointly proposed notice within **FOURTEEN (14) DAYS** of the date of this Order. Should the parties be unable to agree on a proposed notice, they shall each submit proposed notices.

3. Additionally, the parties shall confer on a class notice plan and issues that may arise associated with the administration of the class, including the establishment of an opt-in period, and shall advise the Court, within **FOURTEEN (14) DAYS** of the date of this Order, of these efforts and whether there are issues that require the Court's resolution.

4. Defendant shall produce to Plaintiff in an electronic or computer-readable format the full name, address(es), telephone numbers, email address(es), and dates and locations of employment for each of the collective members on or before **January 31, 2025**.

**DONE AND ORDERED** in Tampa, Florida on December 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

15